Hon. ETHER SHEPLEY, LL. D., CHIEF JUSTICE.
Hon. JOHN S. TENNEY, LL. D., } ASSOCIATE
Hon. JOSEPH HOWARD, } JUSTICES.

## LONGLEY *versus* HILTON.

In relation to partition fences, the power of the fence viewers extends only to the assignment of the respective portions of the dividing line and to the fixing of the time, within which to build the fence.

Further orders or adjudications by them, being unauthorized by the statute, are of no effect.

Thus, an order, (however *equitable* under the circumstances,) that *one* of the adjoining owners should build a fence upon a portion of the line assigned to the *other*, and exonerating the latter from building upon such portion, creates no obligation upon the former, nor relieves the latter from the duty, imposed by the statute, to build the fence upon that portion of the line.

Such an order, though incorporated into the assignment of the divisional line, is merely void, and therefore cannot vitiate the assignment itself. SHEPLEY, C. J., *dissentiente*.

Longley *v.* Hilton.

On Exceptions from *Nisi Prius*, Tenney, J. presiding.

Replevin, for a steer. The defendant alleges that the steer was doing damage in his close, and avows the taking. The plaintiff replies that the steer escaped from his land into that of the defendant, by reason of an insufficiency in that part of the partition fence, which the defendant was bound to maintain. The defendant rejoins, denying any obligation to maintain any part of the fence. Issue was taken upon the rejoinder.

The plaintiff introduced the fence viewers' assignment of the divisional line.

It required each party "to build and keep in repair" $102\frac{5}{25}$ rods on certain designated parts of the line. It happened, upon the part assigned to Hilton, that Longley had already erected $7\frac{8}{25}$ rods of stone wall. And the fence viewers, in their assignment, required that Hilton, to compensate for that erection, should build $7\frac{8}{25}$ rods of stone wall upon that part of the line assigned to Longley, and exempted Longley from building upon that distance.

The defendant requested instruction to the jury, that the assignment did not prove a legal division, because of the direction as to the stone wall. That request was not complied with, but instruction was given that the assignment proved a legal division to have been made.

The verdict was for the plaintiff, and the defendant excepted.

*Stewart*, for the defendant.

*Abbott*, for the plaintiff.

The opinion of a majority of the Court, Tenney and Howard, J. J., (Shepley, C. J. dissenting,) was drawn up by

Tenney, J. — The only question involved in the exceptions is whether the assignment made by the fence viewers, and introduced as evidence at the trial was sufficient to prove a legal division of the partition fence between the parties.

Fence viewers derive all their power from the statute. Any adjudication in a matter, not within their jurisdiction, or any

order for the performance of acts by the parties not embraced in the provisions of the statute is void.

By statute, c. 29, § 5, where the owners or occupants of adjoining lands disagree respecting their rights in partition fences, and their obligations to maintain the same, after proceedings therein prescribed, the fence viewers "may in writing under their hands assign to each party his share thereof, and limit the time within which, each party shall build or repair his part of the fence not exceeding six days," as provided in a previous section of the same chapter. And such assignment "being recorded in the town clerk's office shall be binding upon the parties, and all, who may afterwards occupy the lands; and they shall be obliged always thereafter, to maintain their part of said fence." From the language used in these provisions, it is obvious that the "share," which the fence viewers should assign to each party has reference to the dividing line between the respective owners and occupants.

In the division of the line and the order for the erection or repair of the fence thereon, the provision, in the section referred to, contains the whole power of the fence viewers.

After assignment of the several parts of the line, they have no authority given them by which they can impose upon one party the burden of making or repairing fence upon the line assigned to the other, nor can they excuse him in any respect from the full performance of his duty in making the fence upon the part of the line falling to him. The statute has pointed out what each is bound to do after the assignment of the several portions of the line; and the fence viewers in this respect have only the further power to limit the time for the completion of the fence. Any direction to the owners or occupants beyond that to build or repair the fence within the time specified by law, incorporated into the assignment, would be entirely foreign to their duty as officers, and the parties would not be bound thereby.

If the assignment contains every thing contemplated by the statute, expressed so clearly that the parties cannot mistake the part of the line, upon which each is to build or repair, and

Longley *v.* Hilton.

maintain the fence, and the time is fixed when the fence is to be built or repaired, is either, or are both the adjoining occupants or owners relieved from the performance of the duty required by the statute, by reason of a further requirement in the assignment wholly unauthorized? If in addition to the assignment to each party, of a certain well defined part of the line, and a direction within what time the fence shall be built thereon, he is directed to build or repair the fence with certain specific materials or in a particular mode, it is not believed, that for such cause, he would be discharged of his obligations to do that, which the statute demands. If the fence should be required in the assignment, signed by the fence viewers, to be composed of stone, or brick or boards, would the owner or occupant of the land incur no risk, if he should for that cause, wholly omit to build or repair it? He is bound to know the requirements of the statute and the extent of his duties under it. When the assignment indicates to him clearly all that the statute demands, that he should do, after an apportionment of the line, other requirements of the fence viewers therein, distinct from those, which are binding on him, will not be a protection for the omission of his legal duties, and his neglect to perform them will be at his peril.

In the case before us, the fence viewers assigned to each party the portion of the fence, which they were to build and keep in repair. They also fixed the time within which the fence should be built or repaired. The same length of line was assigned to one and to the other. In all this there is no ground to question the validity of the assignment. There was an attempt to compensate the plaintiff for fence made of stone by him, on a part of the line assigned to the defendant in a manner, not authorized, and the attempt imposed no obligations upon the defendant, and conferred no benefit upon the plaintiff. This direction of the fence viewers was simply void. The defendant was not freed from the performance of the duty required of him, both by the statute and the assignment, to construct the fence upon his part of the line; nor was the plaintiff relieved from the like obligation. The as-

signment was sufficient to prove a legal division of the partition fence between the parties.          *Exceptions overruled.*

SHEPLEY, C. J., dissenting. —

The question presented is, whether the proceedings of fence viewers, called by virtue of the provisions of the statute, c. 29, § 5, can be sustained.

It appears from the assignment made by them to each of these parties, of his share of the fence to be built between their adjoining lands, that those lands adjoined for a distance of 204 rods and 10 links, where the fence was to be built.    The fence viewers were required by the second section of the statute to make an assignment in equal shares of the fence to be built.    They did so, assigning to Hilton 60 rods and 5 links on the westerly end of the line, extending from a road adjoining the westerly end of their lands, easterly to a cedar stake, and another piece on the easterly end of the line a distance of 42 rods and extending from a maple tree designated, to the east end of the line.

They assigned to Longley as his share that portion of the line between the two parts of it assigned to Hilton and extending from the cedar stake to the maple tree, a distance of 102 rods and 5 links.

They directed each party to build and keep in repair a fence on that portion of the line assigned to him, with an exception to be hereafter noticed.    They were authorized to require the parties to build or repair the fence, but were not authorized to require them to continue to "keep in repair the fence," as they did in this case.    This being, however, an attempt to impose an obligation already imposed by law, will not affect the validity of their proceedings.

Doubts have been expressed, whether fence viewers are authorized by the statute to require the parties to build or repair the fences, and whether that obligation is not imposed by the law alone.    The provisions of the third section are, " and if they shall determine that the fence is insufficient, they shall signify the same in writing to the delinquent occupant

Longley *v.* Hilton.

of the land and direct him to repair or rebuild the same within such time as they shall judge reasonable not exceeding six days." If the construction of this clause be, that they are merely to fix the time, when the work should be done, they would have no power to determine, whether an existing fence was such as is required by the first section. It is manifest that such a power was intended to be conferred. If it be urged, that this object will be accomplished by their certifying in writing, that the fence is insufficient, it will be observed, that the statute is equally plain, that they shall direct him to build or repair, as it is, that they should certify it to be insufficient. The record in this case does not show, that they signified in writing, that the fence was insufficient; that fact can only be considered as decided by them by giving effect to their requiring the parties to build or repair. To accomplish the purpose designed the construction must conform to the literal interpretation, that they must at least signify the insufficiency in writing, or "direct him to repair or rebuild the same," as well as to fix the time within which it shall be done.

After having assigned to Hilton his first portion of the line of fence, they say, "he shall also build 7 rods and 8 links of good and sufficient stone wall, eastwardly from said cedar stake to another cedar stake on the south side of the fence spotted and marked with red chalk, to compensate said Longley for the same length of wall already built by him and included in the above mentioned sixty rods." The cedar stake first named in this clause is the one standing at the easterly end of the first portion of the line of fence assigned to Hilton, and he is required to build upon that portion of it assigned to Longley a stone wall a distance of seven rods and eight links; and to do it as a compensation for so much wall formerly built by Longley on that portion of the line assigned to Hilton. This they were not authorized to do. If they had ascertained, that Longley had built the larger portion of the existing fence, they would have been authorized by a writing signed by them to award to him the value

of the excess to be paid to him in money by Hilton within six months after demand. This requirement to build that piece of wall is void; and it is insisted, that it may be rejected without affecting the legality of the other proceedings. If, however, it be rejected, there will be no obligation imposed upon either party to build that portion of the fence; for in the assignment to Longley he is required to build the portion assigned to him "except he shall not build the 7 rods and 8 links assigned to the said Hilton." If the clause named were rejected, and each party should build the portion of fence required of him by the remaining proceedings, there would remain a space in the line of 7 rods and 8 links, upon which there would exist no fence. It would be necessary to reject the exception also to have the whole line of fence built. This would essentially change the character of the proceedings and make them convey a meaning and speak a language contrary to the intention and language of the fence viewers.

The clause providing that the fences shall be built or repaired within six days, cannot, be construed to require the 7 rods and 8 links to be built by the plaintiff within six days, without making the fence viewers speak a language directly opposed to that which they used.

It becomes necessary therefore not only to reject as inoperative a part of the language used, but to supply a defect occasioned by the rejection of it.

The fence viewers appear to have found, that the plaintiff had already built 7 rods and 8 links of wall, for which he was entitled to compensation, and to have proceeded to make it in a manner unauthorized. If their proceedings are regarded as legal, he may be deprived of the compensation, to which he was justly entitled. For the statute does not appear to have been framed to authorize such compensation to be made by other fence viewers and as an independent and separate proceeding.

Their whole proceedings should therefore be regarded as illegal.